**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMANTHA CARTER,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **THE CHANGE COMPANIES,** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Samantha Carter (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against The Change Companies (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Henderson, NC.

3. Upon information and belief, Defendant The Change Companies is a publishing company with a location and corporate headquarters located at 5055 Metric Way, Suite 101, Carson

City, NV 89706.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff was domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII, the ADA, the PHRA and the PFPO.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on October 9, 2024, alleging race and disability discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2025-00409 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated April 30, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA and PFPO claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is African American.

21. On or about October 16, 2023, Defendant hired Plaintiff in the position of Service Representative.

22. Plaintiff worked fully remotely from Philadelphia, PA throughout her employment.

23. Plaintiff was well qualified for her position and performed well.

24. In or around April 2024, Defendant promoted Plaintiff to the position of Account Service Specialist due to her stellar work performance.

25. Plaintiff was the only African American employee at Defendant throughout the course of her employment with Defendant.

### PLAINTIFF IS DISABLED

26. Plaintiff has the serious medical conditions of sciatica and herniated disks in her lower back which are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

27. The major life activities affected by the aforementioned disabilities include, but are not limited to, walking, sitting, standing, performing manual tasks and working.

### PLAINTIFF SUFFERED FROM FLARE UPS DUE TO HER DISABILITIES WHICH PREVENTED HER FROM BEING ABLE TO WORK

28. Throughout her employment, and specifically on a few occasions in or around the spring of 2024, Plaintiff had flare ups from her sciatica.

29. Plaintiff could not move her body during these flare ups.

## PLAINTIFF'S SUPERVISOR DISMISSED PLAINTIFF'S DISABILITY WHEN SHE HAD TO CALL OUT OF WORK

30. Plaintiff notified Lisa Winge (Caucasian), Vice President of Account Services, when this occurred.

31. However, Winge responded that she "had a headache, but [she was] still working", or words to that effect.

## WINGE POSTED PRIVATE CONVERSATIONS BETWEEN HER AND PLAINTIFF AND FALSELY CLAIMED THAT PLAINTIFF WAS UNRELIABLE

32. Further, Winge posted private conversations between Plaintiff and Winge in group chats with others within the company.

33. Winge also told other Caucasian employees at Defendant that Plaintiff was unreliable and did not want to work when Plaintiff had minor health issues.

## PLAINTIFF WAS HOSPITALIZED DUE TO HER DISABILITIES

34. Plaintiff continued to try to work when she was in significant pain.

35. On or about May 20, 2024, Plaintiff was hospitalized at Einstein Jefferson Hospital in Philadelphia for several hours.

36. That same day, Plaintiff sent a doctor's note to Winge to excuse her from work that day for her hospitalization via email.

## WINGE DEMOTED PLAINTIFF

37. In or around June 2024, Winge removed Plaintiff's job duties.

38. Winge claimed this was to "help" Plaintiff.

39. Plaintiff believed this to be in retaliation for her hospitalization due to her disabilities.

5

**WINGE CLAIMED PLAINTIFF WAS PERFORMING ASSIGNMENTS INCORRECTLY DUE TO HER MEDICATION TO TREAT HER DISABILITIES**

40. In or around July 2024, Winge continuously sent Plaintiff emails that she was doing tasks incorrectly.

41. Plaintiff always followed the instruction given to her by Winge.

42. Nonetheless, Winge stated that Plaintiff's medication was "making [Plaintiff] mess up", or words to that effect.

43. Plaintiff reiterated that she was following the steps outlined for her.

**PLAINTIFF APPLIED FOR A MEDICAL LEAVE OF ABSENCE UNDER SHORT-TERM DISABILITY LEAVE DUE TO HER DISABILITIES**

44. On or about July 17, 2024, Winge emailed Plaintiff short-term disability ("STD") paperwork to fill out.

45. Plaintiff filled out the STD paperwork as instructed.

46. Plaintiff sent the STD application paperwork to Amber Bollinger (Caucasian), Chief People and Operations Officer.

**BOLLINGER TOOK ONE (1) MONTH TO APPROVE PLAINTIFF'S APPLICATION FOR SHORT-TERM DISABILITY**

47. However, Bollinger took approximately one (1) month to approve Plaintiff's application for a medical leave of absence under STD leave.

**PLAINTIFF APPLIED AND WAS APPROVED FOR A REASONABLE ACCOMMODATION**

48. In the meantime, Plaintiff requested a reasonable medical accommodation to limit her sitting.

49. Bollinger approved this reasonable accommodation request.

## PLAINTIFF CALLED OUT OF WORK DUE TO A SCIATICA FLARE UP AND DEFENDANT REFUSED TO COVER HER ABSENCE WITH PAID-TIME OFF

50. On or about August 8, 2024, Plaintiff called out of work due to a sciatica flare up.

51. According to Defendant's policy, Plaintiff's call out should have been covered by paid-time off ("PTO").

52. However, following this call out, Defendant stopped paying Plaintiff for her time off.

53. Bollinger and Winge claimed that this decision was due to Plaintiff's performance.

54. However, Defendant continued to pay Caucasian, non-disabled employees for their time off.

## PLAINTIFF'S BROTHER WAS KILLED, BUT WINGE DID NOT OFFER PLAINTIFF BEREAVEMENT LEAVE

55. On August 15, 2025, Plaintiff's brother was killed.

56. Plaintiff notified Winge of this.

57. However, Winge did not offer Plaintiff any bereavement leave as per Defendant's policy.

58. Upon information and belief, Defendant offered bereavement leave to Caucasian and/or non-disabled employees.

## DEFENDANT APPROVED PLAINTIFF'S MEDICAL LEAVE OF ABSENCE/STD

59. On August 19, 2024, Defendant approved Plaintiff's medical leave of absence/STD, which was set to start at the end of the month.

## PLAINTIFF HAD AN INJECTION TO TREAT HER DISABILITIES

60. On or about August 20, 2024, Plaintiff had an injection for her back.

61. Plaintiff had previously notified Winge of her injection appointment weeks prior.

**PLAINTIFF INFORMED WINGE THAT SHE WOULD NEED SURGERY TO TREAT HER DISABILITIES IF TWO (2) ROUNDS OF INJECTIONS DID NOT WORK**

62. Plaintiff informed Winge that if two (2) rounds of injections did not work, Plaintiff would need to have surgery performed.

**DEFENDANT TERMINATED PLAINTIFF**

63. That same day, and just one day after Bollinger notified Plaintiff that she was approved for her medical leave of absence, Winge abruptly terminated Plaintiff.

64. Winge claimed the reason for Plaintiff's termination was due to her performance.

65. However, Plaintiff had not been issued any coaching for her performance.

66. Moreover, Plaintiff had never received a customer complaint.

67. Bollinger emailed Plaintiff her termination paperwork.

68. Upon information and belief, Defendant replaced Plaintiff with Natalie Miller (Caucasian, non-disabled).

69. Defendant discriminated against Plaintiff due to her race and disability and retaliated against her for requesting reasonable accommodations in violation of Title VII, the ADA, the PHRA and the PFPO.

70. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

71. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

72. Plaintiff is a member of protected classes in that she is African American.

73. Plaintiff was qualified to perform the job for which she was hired.

74. Plaintiff suffered adverse job actions, including, but not limited to termination.

75. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

76. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

77. Defendant discriminated against Plaintiff on the basis of her protected class.

78. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

79. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

80. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISCRIMINATION BASED ON RACE
## PENNSYLVANIA HUMAN RELATIONS ACT

81. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

82. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (African American).

83. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

9

## COUNT III – DISCRIMINATION BASED ON RACE
## PHILADELPHIA FAIR PRACTICES ORDINANCE

84. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

85. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (African American).

86. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

87. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

88. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

89. Plaintiff was qualified to perform the job.

90. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

91. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

92. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

10

93. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

94. The purported reason for Defendant's decision is pretextual.

95. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

96. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

97. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

98. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT V – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

99. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

100. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

101. Plaintiff was qualified to perform the job.

102. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

11

103. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

104. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

105. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

106. The purported reason for Defendant's decision is pretextual.

107. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

108. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

109. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT VI – DISABILITY DISCRIMINATION
### PHILADELPHIA FAIR PRACTICES ORDINANCE

110. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

111. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

112. Plaintiff was qualified to perform the job.

113. Plaintiff was subject to an adverse employment action, including, but not limited to

termination.

114. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

115. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

116. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

117. The purported reason for Defendant's decision is pretextual.

118. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

119. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

120. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT VII – RETALIATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

121. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

122. Plaintiff engaged in activity protected by the ADA.

123. Plaintiff requested reasonable accommodations due to her disabilities to Defendant.

124. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

125. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VIII – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

122. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

123. Plaintiff engaged in activity protected by the PHRA.

124. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

125. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IX – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

122. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

123. Plaintiff engaged in activity protected by the PFPO.

124. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

125. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Samantha Carter, requests that the Court grant her the following relief against Defendant:

(a)     Damages for past and future monetary losses as a result of Defendant's unlawful employment practices;

(b)     Compensatory damages for, *inter alia*, mental anguish, humiliation, and emotional pain and suffering as well as any other expenses incurred by Plaintiff due to Defendant's unlawful employment practices;

(c)     Punitive damages;

(d)     Reasonable attorneys' fees;

(e)     Recoverable costs;

(f)     Pre and post judgment interest;

(g)     An allowance to compensate for negative tax consequences;

(h)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the ADA, the PHRA and the PFPO.

(i)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

15

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: July 29, 2026        By:  */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*